UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GIUSEPPE D'ALESSANDRO,

                Plaintiff,

      v.

UNITED STATES OF AMERICA,

                Defendant.

**DECISION AND ORDER**
13-CV-416-RJA

---

## I.    <u>INTRODUCTION</u>

On April 26, 2013, Plaintiff Giuseppe D'Alessandro commenced this action

pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2674.

*See*, Dkt. #1.[1] In his complaint, Plaintiff alleges the following claims against

Defendant United States:[2] (1) that Plaintiff was subject to negligent continued

imprisonment and detention by Defendant (Dkt. #1, at 12-14); (2) that Defendant

failed to provide Plaintiff with proper medical treatment, attention, and/or care (Dkt.

---

[1] References preceded by "Dkt. #" are to Documents filed on the Docket in this FTCA action. (Case #13-CV-416). As explained herein, Plaintiff has also previously filed two other actions in this District, including a habeas petition, *see*, Case #: 08-CV-914, as well as a *Bivens* action, *see*, Case #: 10-CV-927. References to Documents filed on the dockets in those cases will be preceded by the appropriate case number.

[2] The original complaint filed in this FTCA action identified a number of individual Defendants. *See*, Dkt. # 1. On June 18, 2019, the District Judge to whom this case was previously assigned issued a Decision and Order (D&O) which, in pertinent part, dismissed all claims against the individual defendants, upon certification that they were all acting within the scope of their offices or employment, leaving the United States as the sole defendant. *See*, Dkt. #67.

#1, at 15-16); (3) that Plaintiff was subject to false imprisonment and wrongful confinement by Defendant[3] (hereinafter referred to as the "false imprisonment claim") (Dkt. #1, at 17-19); (4) that Defendant intentionally inflicted emotional distress upon Plaintiff (Dkt. #1, at 19-20); and (5) abuse of process. (Dkt. #1, at 20-21).

On July 17, 2020, Defendant filed motions to dismiss and for summary judgment pursuant to Rule 12(b)(1), 12(c), and 56 of the Federal Rules of Criminal Procedure, and Plaintiff filed a cross-motion for summary judgment. (Dkt. #81-88).

Currently pending before the Court is the April 26, 2022, Report, Recommendation, and Order ("RR&O") of Hon. H. Kenneth Schroeder, United States Magistrate Judge. (Dkt. #100). In short, the RR&O recommends that summary judgment be granted Plaintiff on the false imprisonment claim on the issue of liability only and that the remainder of Plaintiff's claims be dismissed.

Plaintiff has not filed any objections to the RR&O. Defendant objects to so much of the RR&O as recommends that Plaintiff be granted summary judgment on the issue of liability under the false imprisonment claim. (Dkt. #101, 105, 106).

---

[3] In his complaint, Plaintiff alleged that he was falsely imprisoned for the entirety of the time he was detained by DHS/ICE, specifically for 16 months and 14 days: from November 19, 2007 (the date he first entered DHS/ICE custody) until April 2, 2009 (the date he was released from DHS/ICE custody), or alternatively, for the time period beginning at the expiration of the first 90 days of his detention until his release. *See*, Dkt. #1, at 17-19. Since the filing of his complaint, however, Plaintiff has since conceded that the first six months of his detention were lawful. Dkt. # 95, p. 2. ("D'Alessandro, however, does not assert that he was falsely imprisoned for the first six months of his detention."); *see also, id*., at 2, n.3 ("The first six months of D'Alessandro's detention are presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001)").

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's underlying criminal and immigration proceedings, habeas corpus petition, and related civil actions have been extensively addressed in prior decisions. *See*, *e.g.*, *D'Alessandro v. Chertoff*, No. 10-CV-927-RJA, 2023 WL 8850458, at *1 (W.D.N.Y. Dec. 21, 2023 [D&O in *Bivens* action); *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368 (W.D.N.Y. 2009) (Case #: 08-CV-914-A [D&O in habeas case]); *People v. D'Alessandro*, No. 8175-90, 2010 N.Y. Slip. Op. 75591 (App. Div. 1st Dep't. June 29, 2010) (unpublished), *lv. denied* 909 N.Y.S.2d 28 (Table) (N.Y. Sept. 29, 2010); *People v. D'Alessandro*, 184 A.D.2d 114, 591 N.Y.S.2d 1001 (1992).

### A.  Plaintiff's Background and Prior Criminal Litigation:

Plaintiff is a native and citizen of Italy who entered the United States in July 1978 and became a lawful permanent resident in June 1981. (Dkt. # 82, ¶ 1; Dkt. # 91, Exhibit 32, p. 9).  In 1989, Plaintiff was arrested in New York and charged under state law with first-degree kidnapping, first-degree attempted robbery, first-degree coercion, second-degree assault, and second-degree attempted grand larceny, in connection with Plaintiff's kidnapping, assault, and restraint of an individual whom Plaintiff suspected of stealing money from a Manhattan restaurant that was owned by a family-member of the Plaintiff. *People v. D'Alessandro*, 184 A.D.2d 114, 115, (1st Dep't. 1992); Dkt. # 82, ¶¶ 2 & 3.  In June 1991, following a jury trial in New York County, Plaintiff was convicted on all charges. *D'Alessandro*, 184 A.D.2d at 115; Dkt. # 82, ¶ 4.  In September of 1991, the trial judge vacated the jury's verdict and granted a new trial based upon misconduct by the state prosecutor during her summation. *D'Alessandro*, 184 A.D.2d at 115.  On appeal, however, the First

Department reversed the trial judge's ruling finding no legal basis for it on two grounds: that D'Alessandro had failed to preserve for appeal any objections to the prosecutor's summation, and that the alleged prosecutorial misconduct provided an insufficient basis to vacate the jury's verdict. *Id.,* at 117-120. The Appellate Division further concluded that any alleged prosecutorial misconduct was harmless error because "the proof of [D'Alessandro's] guilt was overwhelming." *Id.*, at 120.

On remand, Plaintiff was sentenced, in April 1993, principally to a term of imprisonment of 15 years-to-life on the first-degree kidnapping charge (and to lesser, concurrent prison terms on the other charges). *People v. D'Alessandro*, 230 A.D.2d 656, 646 N.Y.S.2d 792 (1st Dep't. 1996).  On August 22, 1996, the First Department affirmed Plaintiff's conviction, once again finding the evidence of his guilt to be "overwhelming". *D'Alessandro*, 230 A.D.2d at 656-657.

**B.  Plaintiff's Removal Proceedings:**

In or about March 1998, while Plaintiff was serving his New York State sentence, the former Immigration and Naturalization Service ("INS") commenced removal proceedings against him on account of his criminal convictions. (Dkt. # 82, ¶ 10).  The INS sought to remove Plaintiff under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), which provides for the removal of "[a]ny alien who is convicted of an aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii). (Dkt. # 91, Exhibit 2). Plaintiff fell within that provision since one or more of his convictions was for "a crime of violence" accompanied by a prison term of at least a one-year. 8 U.S.C. § 101(a)(43)(F). *Id.*

4

On October 26, 1998, an Immigration Judge found Plaintiff removable as an aggravated felon, ordered his removal to Italy, and found him ineligible for a waiver of inadmissibility under former INA § 212(c), 8 U.S.C. § 1182(c). (Dkt. # 91, Exhibits 3 & 4).  Plaintiff appealed, but the Board of Immigration Appeals ("BIA") dismissed the appeal on March 30, 1999. (Dkt. # 91, Exhibit 7).

Thereafter, on October 23, 2007, Plaintiff filed a motion with the BIA, seeking to reopen his removal proceedings on the ground that he was eligible for a discretionary waiver of relief from deportability under former INA § 212(c) in light of *St. Cyr v. INS*, 533 U.S. 289 (2001). (Dkt. # 91, Exhibit 5).

On November 19, 2007, Plaintiff, having served 14 and ½ years of his 15-year sentence, was granted parole from his criminal sentence by the New York State Department of Corrections and Community Supervision ("DOCCS").  (Dkt. # 91, Exhibit 6; Dkt. #1, ¶30).  Since he was subject to a final order of removal, that same day, Plaintiff was immediately transferred to the custody of the U.S. Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE").  *Id*.  As an alien under a final order of removal, Plaintiff was held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, pending his removal to Italy. (Dkt. # 82, ¶ 17).

Within a matter of days from his entering into ICE custody, DHS officials took a preliminary step toward executing Plaintiff's removal, requesting a travel document for Plaintiff from the Consulate General of Italy on November 26, 2007. (Dkt. # 91, Exhibit 8).  On November 27, 2007, the BIA denied Plaintiff's motion to reopen his removal proceedings. *Id*.  ICE provided the Italian Consulate with an itinerary,

reflecting ICE's arrangement for Plaintiff to be removed to Italy in early January 2008, and the Consulate issued a travel document for Plaintiff on December 10, 2007. *Id.*

With his removal imminent, Plaintiff, in late-December of 2007, filed a petition for review ("PFR") and a request for a stay-of-removal with the U.S. Court of Appeals for the Second Circuit. (Dkt. # 91, Exhibits 9, 10).

By filing his PFR and stay-of-removal request, Plaintiff was able to forestall his removal as the Executive Branch has a longstanding agreement with the Second Circuit whereby it agrees to forbear the removal of any alien who—like Plaintiff did in this case—files a PFR and stay-of-removal request with that Court (at least until such time as a stay is denied). *See In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012). This so-called "forbearance policy" is memorialized in a Second Circuit memorandum dated September 5, 1995, and in the letter of January 26, 2007, to the Second Circuit from the U.S. Department of Justice ("DOJ"). *Id.*

Plaintiff remained in immigration detention while his Second Circuit case proceeded. Although it does not appear that Plaintiff was ever afforded a bond hearing, on four (4) different occasions while he was in DHS custody, various ICE officials reviewed Plaintiff's custody status to determine whether to continue his detention or release him.

The first custody review occurred in February 2008, approximately 3 months after he entered DHS custody. (Dkt. #91, Exhibits 11, 12). On February 7, 2008, Plaintiff was served with a "Notice to Alien of File Custody Review" stating that, "on

6

or about February 19, 2008," a "Deciding Official" within ICE would "review [Plaintiff's] case for consideration of release on an Order of Supervision." (Dkt. #91, Exhibit 11). Plaintiff was afforded the opportunity to submit any documentation that Plaintiff wished to submit. *Id*. The Deportation Officer assigned to analyze Plaintiff's case submitted a recommendation to continue Plaintiff's detention. It noted that, "[w]ith the subject's tendency toward violence and severity of his criminal history it is recommended that the subject remain in ICE custody while awaiting the resolution of his stay of removal and arrangements to effect his removal to Italy." (Dkt. #91, Exhibit 12).  Such document was signed by ICE's Acting Field Office Director and dated February 19, 2008. *Id*.  That same day, Plaintiff was served with the decision, which advised Plaintiff that, "based on a review of your file and consideration of information you submitted to ICE's reviewing officials…you will not be released from the custody of [ICE] at this time.". (Dkt. 91, Exhibit 13).

Plaintiff's custody status was reviewed a second time in the fall of 2008, and on or about November 10, 2008, the ICE Assistant Field Office Director advised Plaintiff's attorney that Plaintiff's detention would continue.  (Dkt. # 91, Exhibit 14).

### C. Plaintiff's Habeas Petition (Case #: 08-CV-914):

Thereafter, on December 15, 2008, Plaintiff filed a habeas petition captioned *D'Alessandro v. Mukasey*, *see*, 08-CV-914 (W.D.N.Y., Dkt. #1), in which he sought release from DHS/ICE custody.[4]

---

[4] While his habeas petition was pending, ICE conducted a third review of Plaintiff's custody status in early 2019. (13-CV-416, Dkt. # 91, Exhibits 15 &16).  On February 13, 2009, Plaintiff was notified that his request for release was being denied. (*Id.*, Exhibit 17). Subsequently, in response to Plaintiff's counsel's request that ICE reconsider its

Three months after the petition was filed, Magistrate Judge Victor E. Bianchini, on March 25, 2009, issued a R&R recommending that Plaintiff's habeas petition be granted. *See*, *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 406 (W.D.N.Y. 2009). On the same day, Magistrate Judge Bianchini also issued a separate order granting Plaintiff bail pending a final decision on the habeas petition. *See*, 08-CV-914 (W.D.N.Y., Dkt. #17). In the bail order, Magistrate Judge Bianchini directed that Plaintiff be given supervised release by March 30, 2009, *see*, 08-CV-914 (W.D.N.Y., Dkt. #18), but on March 26, 2009, the Magistrate Judge extended "the release due date" to April 2, 2009. *See,* 1:08-CV-914 (W.D.N.Y., Dkt. #19).

On March 27, 2009, the Government filed a motion seeking an emergency stay of the Magistrate Judge's bail decision. *See*, 08-CV-914 (W.D.N.Y., Dkt. # 20).

On April 2, 2009, this Court denied the government's request for an emergency stay and affirmed the Magistrate Judge's bail decision. *See*, 08-CV-914 (W.D.N.Y., Dkt. # 26). On that same day, Plaintiff was released from immigration custody in accordance with Magistrate Judge Bianchin's March 26th order.

On May 29, 2009, this Court, noting that Plaintiff had been released from immigration custody for approximately 8-weeks and had been otherwise compliant with his parole conditions, issued a D&O adopting the Magistrate Judge's recommendation to grant the habeas petition. *See*, 08-CV-914 (W.D.N.Y., Dkt. # 37).

---

decision to detain Plaintiff (*Id*., Exhibit 21), ICE, for the fourth time, on March 31, 2009, reaffirmed its custody decision. (*Id*., Exhibit 22).

On June 29, 2010, the New York State Supreme Court, Appellate Division, First Department, granted a writ of error coram nobis and vacated Plaintiff's conviction on the grounds of ineffective assistance of appellate counsel for failing to raise a speedy trial argument on appeal. *People v. D'Alessandro, Giuseppe*, No. MOTION M-2765A, 2010 WL 2652447 (N.Y. App. Div. June 29, 2010).

With Plaintiff's criminal conviction vacated, the BIA, on December 10, 2010, terminated the removal proceedings against Plaintiff. (Dkt. #91, Exhibit 24).

### D.  Plaintiff's *Bivens* Action (Case No. 10-CV-927):

Following his release from immigration custody and the vacating of his criminal conviction, Plaintiff, on November 18, 2010, commenced an action, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), seeking damages against a number of federal officials located in Washington, D.C., as well as the BFDF in Batavia, alleging various constitutional violations while in DHS/ICE custody. *See*, *D'Alessandro v. Chertoff, et al.*, Case No. 10-CV-927, Dkt. #1.

By D&O dated December 12, 2011, this Court dismissed the *Bivens* action on the ground that "special factors" precluded the creation of a new *Bivens* remedy for Plaintiff to provide him a damages remedy for alleged violation of immigration regulations. *D'Alessandro v. Chertoff, et al.*, Case No. 10-CV-927, Dkt. #59.

On March 27, 2013, this Court granted Plaintiff's motion for reconsideration of its December 12, 2011, D&O granting Defendants' motions to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). *D'Alessandro v. Chertoff, et*

*al.*, Case No. 10-CV-927, Dkt. #72.[5]  Plaintiff also sought leave to file an amended complaint under Rule 15(a)(2).

On December 12, 2023, this Court issued a D&O reaffirming its prior determination that Plaintiff's *Bivens* actions was subject to dismissal; and further concluding that since the FTCA claims Plaintiff sought to raise in his 2010 lawsuit were duplicative to those in his a subsequent 2013 FTCA lawsuit (*i.e.,* Case No. 13-CV-416), such claims were—in order to avoid duplicative litigation—subject to dismissal, without prejudice. Accordingly, Plaintiff's motion for reconsideration and leave to amend the complaint was denied, and Plaintiff's *Bivens* complaint, filed under 10-CV-927-A, was dismissed without prejudice.  *See, D'Alessandro v. Chertoff, et al*., Case No. 10-CV-927, Dkt. #81.[6]

### E.  <u>Plaintiff's Instant FTCA Action</u> (Case No. 13-CV-416):

On February 12, 2012, Plaintiff filed an administrative tort claim with ICE. (Dkt. # 91, Exhibit 27).  In it, Plaintiff sought $1.8 million in damages. *Id*.  On October 29, 2012, ICE denied Plaintiff's administrative claim. (Dkt. # 91, Exhibit 28).

On April 29, 2013, Plaintiff filed the instant action under the FTCA, based on the same allegations previously asserted in the *Bivens* suit, claiming that various individual defendants committed various torts against him during the time he was in

---

[5] Plaintiff appealed this Court's December 12, 2011, D&O to the Second Circuit, but that appeal was stayed pending a ruling by this Court on Plaintiff's motion to reconsider. *See,* Docket No. 12-576 (2d Cir.).

[6] On February 15, 2024, the Second Circuit issued a mandate dismissing Plaintiff's appeal in Docket No. 12-576 (2d Cir.).  *See, D'Alessandro v. Chertoff, et al*., Case No. 10-CV-927, Dkt. #83.

ICE custody from November 19, 2007, until April 2, 2009. (Dkt. # 1).[7]  Specifically,

Plaintiff asserted claims for: (i) "negligent continued imprisonment and detention," (ii)

"failure to provide proper medical treatment/attention/care," (iii) false imprisonment,"

(iv) "intentional infliction of emotional distress," and (v) "abuse of process." *Id*.

In an R&R dated January 4, 2017, Magistrate Judge H. Kenneth Schroeder,

Jr., recommended the dismissal of the FTCA suit based on the two-year statute of

limitations because Plaintiff filed his administrative claim with ICE on February 12,

2012, more than two years from the date of his release from ICE custody (April 2,

2009). (Dkt. # 57).

With this case then transferred to District Judge Michael Telesca, *see*, Dkt. #

66, the Court, on June 18, 2019, granted, in part, and denied, in part, defendants'

motion to dismiss. Specifically, Judge Telesca dismissed all claims against the

individual defendants and limited Plaintiff's maximum recovery to the $1.8 million

demanded in the administrative tort claim but denied defendants' motion with

respect to the statute of limitations. (Dkt. # 67).

The Government then answered the complaint on July 18, 2019. (Dkt. # 69).

On July 17, 2020, at the conclusion of discovery, the Government moved to dismiss

the complaint and/or for summary judgment on the substantive merits of all of

---

[7] After filing his complaint, Plaintiff conceded that the first six months of his detention
were lawful. Dkt. # 95, p. 2.  As such, he claims his that his false imprisonment/unlawful
detention began in or about May of 2008, and that he was "intentionally and
unconstitutionally" imprisoned or detained for "ten (10) months of [his] sixteen (16)
month detention." Dkt. #105, p. 5.

Plaintiff's claims. (Dkt. # 81-85). Plaintiff cross-moved for summary judgment. (Dkt. # 86-88).

On April 26, 2022, Magistrate Judge Schroeder rendered an RR&O on the parties' respective motions. (Dkt. # 100). Judge Schroeder recommended that: (i) Plaintiff's motion for summary judgment be granted on the issue of liability on his intentional false imprisonment claim; (ii) all other aspects of Plaintiff's motion for summary judgment be denied; (iii) Defendant's motion seeking dismissal of Plaintiff's remaining claims (except for his false imprisonment claim) be granted. (Dkt. # 100). Thus, Judge Schroeder recommended that all of Plaintiff's claims be dismissed, except for his claim for false imprisonment, for which Judge Schroeder determined Plaintiff was entitled to summary judgment on the issue of liability.

In reaching the conclusion that Plaintiff was entitled to summary judgment on the issue of liability under his claim of false imprisonment/wrongful confinement,[8] Magistrate Judge Schroeder first determined that Defendant had waived sovereign immunity with respect to such claims and that under the FTCA, a false imprisonment/wrongful confinement claim such as that raised by Plaintiff was viable so long as a private analogue existed under New York State law. (Dkt. #100, p. 17). Judge Schroeder further found that based upon the Second Circuit's decision in *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012), a private analogue to such

---

[8] As noted in the RR&O, Plaintiff reframed his claim into one of wrongful confinement, rather than false imprisonment. (Dkt. #100, p. 15). "Wrongful confinement" is "the label given an unjust conviction claim in the context of an already incarcerated claimant. " *Callender v. State*, 38 Misc. 3d 651, 655, 956 N.Y.S.2d 792 (Ct. Cl. 2012)(citing *Donald v State of New York*, 17 N.Y.3d 389, 394 (2011)).

claim does, in fact, exist under New York law, such that this Court has subject matter jurisdiction over such claim. (Dkt. #100, at pp. 17-22).

On the merits, the Magistrate Judge noted that the four "essential elements" of a false imprisonment/wrongful confinement claim under New York State law were as follows: "(1) that the defendant intended to confine plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975); *see*, Dkt. #100, p. 15.  Magistrate Judge Schroeder found— and the Defendant in its objection does not seriously contest—that the first three elements were easily met in this case. *See*, Dkt. #100, p. 23.

As to the fourth element—whether the confinement was privileged— Magistrate Judge Schroeder concluded that this Court's prior decision in the habeas case (08-CV-914) conclusively decided the issue and established that the detention was not privileged, such that Defendant is collaterally estopped from arguing to the contrary.  *See*, *D'Alessandro*, 628 F. Supp. 2d at 406.

While Defendant filed objections to Magistrate Judge Schroeder's RR&O, the Plaintiff did not. For the reasons set forth below, this Court grants the Defendant's objections and grants Defendant's motion to dismiss the complaint in its entirety.

### III.   LEGAL STANDARDS

### A. Standard of Review

"When reviewing a magistrate judge's order regarding a dispositive motion, such as a motion to dismiss for failure to state a claim upon which relief can be

granted, a district court 'shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Singh v. New York State Dep't of Tax'n & Fin.*, 865 F. Supp. 2d 344, 348 (W.D.N.Y. 2011) (quoting 28 U.S.C. § 636(b)(1)).; *see also* Fed.R.Civ.P. 72(b)(3). "[W]hen a party makes no objection to a portion of a report and recommendation… the court reviews that portion for clear error or manifest injustice." *Singh*, 865 F. Supp. 2d at 348 (citations and quotations omitted).  After conducting the appropriate review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.  The Summary Judgment and Motion to Dismiss Standards**

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)). Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence." *Id*.

14

When addressing a motion for summary judgment, "[t]he court must view the evidence in the record in the light most favorable to the non-moving party" and "draw[ ] all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## C. **The Federal Torts Claim Act**

"'The United States, as sovereign, is immune from suit save as it consents to be sued,' and hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit." *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir.1998) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Congress enacted the FTCA, which "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Hamm v. United States*,

483 F.3d 135, 137 (2d Cir. 2007) (quotations omitted). "'[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *See Millares Guiraldes de Tineo*, 137 F.3d at 719 (*quoting Sherwood*, 312 U.S. at 586). "Any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant." *Millares Guiraldes de Tineo*, 137 F.3d at 719; *see also United States v. Kubrick*, 444 U.S. 111, 117–18 (1979) (stating that the courts should neither extend nor narrow Congress' waiver of sovereign immunity).

The FTCA empowers the federal district courts with the "exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b)(1). For there to be liability, the employee's act must have taken place "while acting within the scope of his [or her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See id*.

As originally enacted, the FTCA barred all suits against the government "arising out of ... false imprisonment [and] false arrest." 28 U.S.C. § 2680(h) (1970). However, in 1974, Congress amended the FTCA statute to "explicitly waive[] sovereign immunity 'with regard to acts or omissions of investigative or law enforcement officers of the United States,' for 'any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious

prosecution.'" *Liranzo v. United States*, 690 F.3d at 85 (quoting 28 U.S.C. § 2680(h))(footnotes omitted).

By waiving sovereign immunity in those cases in which a plaintiff alleges "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo*, 690 F.3d at 86; *see also*, *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA."). This so-called "private analogue" requirement that a claim address "like circumstances" does not mean "under the same circumstances." *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65 (1955). Given the *sui generis* nature of governmental action, courts must look "further afield" to find analogous torts relating to the government activity at issue. *United States v. Olson*, 546 U.S. 43, 46 (2005).

Generally, the FTCA does not waive sovereign immunity for intentional tort claims. *See* 28 U.S.C. § 2680(h). However, "[i]n 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers" acting within the scope of their employment. *Millbrook v. United States*, 569 U.S. 50, 52 (2013). "Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity to claims for six intentional torts, including [false arrest and false imprisonment], that are based on the 'acts or omissions of investigative or law enforcement officers.'" *Id.* at 52–53

(quoting 28 U.S.C. § 2680(h)). The proviso defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Immigration officials are investigative or law enforcement officers for the purposes of the FTCA. *Caban v. United States*, 671 F.2d 1230, 1234–35 (2d Cir. 1982).

"On its face, the law enforcement proviso applies where a claim both arises out of one of the proviso's six intentional torts [assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution], and is related to the 'acts or omissions' of an 'investigative or law enforcement officer'" who is "acting within the scope of his office or employment." *Millbrook*, 569 U.S. at 54–55 (quoting 28 U.S.C. § 1346(b)).

## D.   Plaintiff's False Imprisonment/Wrongful Confinement Claim

As the third cause of action in his complaint, Plaintiff alleges that Defendant "intentionally detained and confined Plaintiff against his will." Dkt. #1, ¶49.  The complaint goes on to allege, that Defendant accomplished such false imprisonment/ wrongful confinement by "fail[ing] to provide Plaintiff with custody reviews, and by failing to undertake th[o]se reviews in a statutorily required manner, which would have required [Plaintiff's] release, as well as by otherwise wrongfully continuing his detention and creating customs and policies fostering such statutorily inadequate

custodial reviews and fostering D'Alessandro's unlawful detention…in violation of applicable statutes regulations." *Id*.[9]

Under New York State law, the elements that Plaintiff must prove to sustain a claim for false imprisonment/wrongful confinement are: (1) the defendant intended to confine plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Torres v. Jones*, 26 N.Y.3d 742, 759 (2016); *Broughton v. State*, 37 N.Y.2d at 456.  In New York, the tort of false imprisonment is identical to that of false arrest. *Liranzo v. United States*, 690 F.3d at 91, n.13 ("[w]e use the terms 'false arrest' and 'false imprisonment' interchangeably. Under New York law, 'the tort of false arrest is synonymous with that of false imprisonment.'" [quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991)]).

"A detention, otherwise unlawful, is privileged where the confinement was by arrest under a valid process issued by a court having jurisdiction." *Donald v. State of New York*, 17 N.Y.3d 389, 395 (2011)(internal quotation marks and citation omitted).

_____

[9]While the cause of action also contained allegations which might reasonably be construed as alleging a false imprisonment claim sounding in negligence, *see, e.g., id*., ¶51, Plaintiff abandoned his second cause of action which alleged negligent continued imprisonment and detention. Dkt. #95, p. 6, n.2.  *See, D'Alessandro v. United States*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *5 (W.D.N.Y. Apr. 26, 2022). Regardless, "[i]t is well settled that New York courts do not recognize claims for negligent or malicious investigation. A plaintiff seeking damages for an injury resulting from a wrongful arrest and detention 'may not recover under broad general principles of negligence * * * but must proceed by way of the traditional remedies of false arrest and imprisonment." *Johnson v. Kings Cnty. Dist. Attorney's Off*., 308 A.D.2d 278, 284–85 (3rd Dep't. 2003)(quotations omitted)(citing *Antonious v. Muhammad*, 250 A.D.2d 559, 559–560 (2nd Dep't. 1998); *Heath v. State*, 229 A.D.2d 912, 912–13 (4th Dep't. 1996); and *Boose v. City of Rochester*, 71 A.D.2d 59, 62 (4th Dep't. 1979)).

"In other words, 'where the illegal imprisonment is pursuant to legal process which is valid on its face, the State cannot be held liable in damages for wrongful detention ... [unless] the court issuing the process lacked jurisdiction of the person or the subject matter.'" *Collins v. State*, 69 A.D.3d 46, 51 (4th Dep't. 2009) (quoting *Harty v. State of New York*, 29 A.D.2d 243, 244 (3rd Dep't. 1968), *aff'd*. 27 N.Y.2d 698 (1970)). Defendant bears the burden of establishing that the detention was privileged. *See*, *Hudson v. State of New York*, 115 A.D.3d at 1022 (3rd Dep't. 2014); *Moulton v. State of New York*, 114 A.D.3d 115, 120 (3d Dep't. 2013).

## IV.   LEGAL ANALYSIS

### 1.   The Magistrate Judge's Determination That Defendant Is Entitled To Summary Judgment/Dismissal Of Plaintiff's Claims For Negligent Continued Imprisonment And Detention; Failure To Provide Proper Medical Treatment/Attention/Care; Intentional Infliction Of Emotional Distress; And Abuse Of Process Is Not Clearly Erroneous

At the outset, the Court observes that Plaintiff did not file any objections to those portions of Magistrate Judge Schroeder's RR&O that were adverse to Plaintiff. Upon review, this Court concludes that there was no clear error in Magistrate Judge Schroeder's RR&O recommending dismissal of Plaintiff's claims for: negligent continued imprisonment and detention; failure to provide proper medical treatment/attention/ care; intentional infliction of emotional distress; and abuse of process. Accordingly, to the extent that the RR&O recommended that Defendant be granted dismissal/summary judgment on all Plaintiff's claims except the claim for false imprisonment/wrongful confinement, the RR&O is adopted, and such claims are **DISMISSED**.

**2. Although A Private Analogue To Plaintiff's False Imprisonment/Wrongful Confinement Does Exist Under New York Law, Defendant Has Established That Plaintiff's Detention Was Privileged And Therefore Plaintiff's False Imprisonment/Wrongful Confinement Claim Must Be Dismissed**

For the reasons which follow, this Court agrees with Magistrate Judge Schroeder's determination that a private analogue to Plaintiff's false imprisonment/wrongful confinement claim does exist under New York State law. However, this Court disagrees with so much of Magistrate Judge Schroeder's RR&O as determined that this Court's prior decision in the habeas corpus proceeding conclusively established Defendant's liability on such false imprisonment/wrongful confinement claim. Instead, this Court finds that under New York law Plaintiff's confinement was privileged. This determination that the detention was privileged forecloses Plaintiff's ability to establish his claim that he was falsely imprisoned or wrongfully confined.

Accordingly, this Court does not accept so much of the RR&O as recommended that Plaintiff be granted summary judgment on the issue of liability on Plaintiff's false imprisonment/wrongful confinement claim. Instead, this Court determines that Defendant's motion to dismiss Plaintiff's false imprisonment/wrongful confinement claim—the only remaining claim in the Plaintiff's complaint— should be **GRANTED**, and therefore, the complaint is **DISMISSED**.

**A. A Private Analogue to Plaintiff's Detention Does Exist Under New York Law**

Plaintiff's sole surviving claim is that he was falsely imprisoned/wrongfully confined for a portion of the period he was held in DHS/ICE custody between

November 19, 2007, and April 2, 2009.  In that regard, as Magistrate Judge

Schroeder noted, Plaintiff "concedes the first six months of his detention were

presumptively valid and that his claim does not pertain to this timeframe." *See,*

*D'Alessandro v. United States*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *6

(W.D.N.Y. Apr. 26, 2022).  Thus, the amount of time that Plaintiff claims he was

subject to false imprisonment/wrongful confinement encompasses a period of

approximately 10 and one-half months (*i.e.*, from on or about May 19, 2008, until

April 2, 2009, the day he was released).

The first step to determining whether Plaintiff's claim is viable under the FTCA

involves a determination whether there exists a private analogue to immigration

detentions such as the one to which Plaintiff was subject.  Under 28 U.S.C. §

1346(b)(1), a plaintiff may only recover on claims "under circumstances where the

United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred." *Id*. As such, recovery in

tort is only allowed "in the same manner and to the same extent as a private

individual under like circumstances ...." 28 U.S.C. § 2674.

Here, Defendant maintains—both before the Magistrate Judge and in its

objections—that there is no private analogue under New York Law for a claim of

false imprisonment in circumstances, as here, where the initial detention was lawful.

*See*, *D'Alessandro v. United States*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at

*8; *see also*, Dkt. #101, pp. 15-20.  In his RR&O, Magistrate Judge Schroeder

disagreed with the Defendant's contention and noted that although "the government

is right that *Liranzo* concerned a detention unlawful from the start, and in the present

case, plaintiff concedes that the first six months were lawful, this Court does not believe that this distinction is fatal." *D'Alessandro v. United States*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *8.

In this Court's view, Defendant, in both its argument before the Magistrate Judge and its objections to this Court, conflates the "threshold jurisdictional question," *i.e.,* whether a private analogue exists, with the "substantive tort law principles," *i.e.,* whether the facts present in this case are sufficient to meet the elements of a false imprisonment/wrongful confinement claim under New York law. *See*, *Liranzo*, 690 F.3d at 92.

In examining the threshold jurisdictional issue of whether a private analogue exists under New York law, this Court notes that the Second Circuit has had occasion to consider the viability of a FTCA claim based upon an allegedly erroneous immigration detention in two cases referred to as *Caban I* and *Caban II*. *See*, *Caban v. United States*, 671 F.2d 1230 (2d Cir. 1982) ("*Caban I*"), and *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984) ("*Caban II*").   The plaintiff in *Caban* was an individual who was stopped at John F. Kennedy International Airport upon arrival from the Dominican Republic.  Being illiterate, unable to provide documentation to substantiate his claim that he was a citizen, and providing suspicious answers to the INS officer's questions, Caban was detained by INS officers for six days before it was determined that he was, in fact, a lawful citizen.

Caban filed an FTCA complaint "for damages resulting from his arbitrary detention by agents of the [INS]." *Caban I*, 671 F.2d at 1230.  The Second Circuit, in *Caban I,* rejected the government's contention that the Plaintiff's claim was barred

by the so-called discretionary function exception—which bars FTCA claims based
upon the exercise or performance or the failure to exercise or perform a
discretionary function or duty—and remanded the case for further proceedings.  On
remand, "a bench trial was held, and the district court determined that the complaint
should be dismissed because the arrest was privileged under the federal standards
applicable to immigration officers, a standard incorporated into New York law
through its requirement that a plaintiff suing a private individual for false
imprisonment establish that his confinement was 'not ... privileged.'"  *Liranzo*, 690
F.3d at 90–91 (quoting *Caban II*, 728 F.2d at 70–71) (internal quotation marks
omitted; emphasis supplied)).

Importantly, the Second Circuit—impliedly in *Caban I* and *Caban II*, and
expressly in *Liranzo*— determined that under the FTCA a private analogue does
exist under New York law—in the form of a claim for false imprisonment[10] —for
individuals, like Plaintiff, who seek to challenge their arrest and detention in New
York by federal immigration officials who claim they are subject to removal or
deportation.[11]  *See, Lizano, supra.*  That is this case, and accordingly, this Court

---

[10] The *Lizano* Court recognized that the terms "false arrest" and "false imprisonment"
may be used interchangeably. "Under New York law, 'the tort of false arrest is
synonymous with that of false imprisonment.'" *Liranzo*, 690 F.3d at 91, n. 13 (citing
*Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991)).  As the Circuit has specifically noted,
"[t]he common law tort of false arrest is a species of false imprisonment, an action
derived from the ancient common-law action of trespass that protects the personal
interest of freedom from restraint of movement."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d
110, 118 (2d Cir. 1995)(alterations and quotations omitted).

[11] As the *Liranzo* Court reasoned, "[i]f indeed the *Caban II* court had found the absence
of a private analogue to immigration detentions, its inquiry would have been at an end
because there would have been no waiver of sovereign immunity, and thus no subject

agrees with Magistrate Judge Schroeder's conclusion that a private analogue exists with respect to Plaintiff's false imprisonment claim such that this Court has jurisdiction to hear Plaintiff's false imprisonment claim. *See, D'Alessandro*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *9.

Having concluded that New York law provides a private analogue to a claim of false imprisonment/wrongful confinement, this Court must now consider the merits of Plaintiff's claim in this case under that law.

### B.    Plaintiff's Confinement Was Privileged

In New York, a false imprisonment claim asks whether: (1) defendant intended to detain plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent, and (4) the confinement was not otherwise privileged. *Broughton*, 37 N.Y.2d at 456.  The Plaintiff, as the proponent of the summary judgment motion, bears the burden of demonstrating that he was falsely imprisoned as a matter of law. *Afanador v. State*, 81 Misc. 3d 1213(A), 2023 WL 8464951 (N.Y. Ct. Cl. 2023). Here, Magistrate Judge Schroeder determined, and the Defendant does not seriously contest, that Plaintiff has established the first three elements of the claim, and that Defendant has failed to establish any material issue of fact as to those elements.

---

matter jurisdiction over Caban's FTCA claims. Instead, the *Caban II* court considered the substantive standards under which the immigration officials' conduct was to be judged—an inquiry that would only be necessary, at least in a case in *Caban II*'s posture, if a private analogue existed. We therefore do not read *Caban II*…to indicate that there is no private analogue to immigration detentions." *Liranzo*, 690 F.3d at 93 (citations and quotations omitted).

In the Court's view, the only real issue in dispute in this case involves the fourth element of a false imprisonment claim under New York law—whether the confinement was privileged.  The burden of establishing that it was privileged rests with Defendant. *Moulton v. State*, 114 A.D.3d 115, 120, 977 N.Y.S.2d 797, 802 (2013) (citing *Hollender v. Trump Vil. Coop.*, 58 N.Y.2d 420, 425, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983)).

Regarding this fourth element—*i.e.*, whether Defendant's actions were privileged—Magistrate Judge Schroeder determined that this Court's prior decision in the related habeas corpus proceeding involving Plaintiff conclusively "decided this issue and estops defendant from arguing to the contrary." *D'Alessandro*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *9.  As a result, Magistrate Judge Schroeder determined that Defendant did not—and could not—carry its burden of establishing that its conduct was privileged. Consequently, Magistrate Judge Schroeder recommended that Plaintiff be granted summary judgment on the issue of liability on his false imprisonment claim.  This Court disagrees.

Importantly, this Court observes that Plaintiff does not contend that his initial transfer from DOCCS custody into DHS/ICE custody based upon the prior order of removal entered by the immigration judge was, in any way, improper.  At the time, Plaintiff, having been convicted of an aggravated felony and served well-over a decade in prison, was subject to a valid order of removal. Indeed, since the filing of his complaint, Plaintiff himself has acknowledged that his false imprisonment/ unlawful confinement claim did not arise until *after* the first six-months of his immigration detention.  *See*, Dkt. # 95, p. 2.  The implicit assumption in Plaintiff's

assertion that "[t]he first six months of [his] detention [we]re presumptively reasonable under *Zadvydas*", *see id*., at n. 3, is that it was only during the course of Plaintiff's ongoing detention by Defendant that his imprisonment or confinement became false or unlawful.  In short, Plaintiff does not and cannot contest the legality of his initial transfer from the custody of DOCCS to the custody of DHS/ICE.

This Court agrees with Plaintiff's concession that his initial transfer from DOCCS custody to DHS/ICE custody was accomplished in full compliance with the law.  Indeed, the Second Circuit has recognized that where, as here, such a transfer occurs pursuant to a valid removal order issued by an IJ, such transfer has occurred "pursuant to legal process."  *See*, *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017) (immigration detainee's false imprisonment claim accrued when he was "held pursuant to legal process," which occurred at least when an immigration judge ordered his removal).  Where, as here, an "individual is maintained in custody for a new purpose after he was otherwise eligible to be released, he is subjected to a new seizure that must be supported by probable cause." *Hernandez v. United States*, 939 F.3d 191, 200–01 (2d Cir. 2019)(citing *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005); *cf. Arizona v. United States*, 567 U.S. 387, 413 (2012) ("[D]elay[ing] the release of some detainees for no reason other than to verify their immigration status ... would raise constitutional concerns.")).

In this case, with Plaintiff's transfer from DOCCS to DHS/ICE custody, was obviously for a new purpose, as the valid final order of removal (and the detainer which issued as a result of that order of removal), were predicated upon Plaintiff's prior NYS conviction for kidnapping, an "aggravated felony" for which Plaintiff had

served a term of imprisonment of more than 5 years.  As such, they provided a lawful basis for such transfer of custody.[12]  As discussed further below, Plaintiff's status not only permitted, but required, that DHS/ICE take him into immigration custody following his release from DOCCS custody.

Although not discussed extensively by the parties or explored by the Magistrate Judge, this Court believes that in evaluating the propriety of Plaintiff's immigration detention it is useful first to identify under what authority Plaintiff was being detained by DHS/ICE.  Indeed, throughout both the habeas case and the proceedings to date in this FTCA action, both the parties and the Magistrate Judge have proceeded under the presumption that Plaintiff, as an alien subject to a final order of removal, was being detained pursuant to Title 8, United States Code, § 1231.  *See*, *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 378 (W.D.N.Y. 2009) (accepting, in the habeas case, that Plaintiff's detention was under the post-removal-period detention statute set forth at 8 U.S.C. §1231); *D'Alessandro v. United States*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *7 (endorsing assertion, in the instant FTCA case, that "plaintiff's initial detention was proper in that he was ordered removed by an immigration judge, and 8 U.S.C. § 1231 [] provides that non-citizens with final removal orders must be detained during a 90-day removal period...[and]…not[ing] that the Supreme Court has recognized [in *Zadvydas*] that

---

[12] *See e.g., Cartagena-Paulino v. Reno*, No. 00 CIV. 2371(LTS) JC, 2003 WL 21436224, at *2 (S.D.N.Y. June 20, 2003)(finding permanent resident who, like defendant, was found guilty of kidnapping in violation of in Section 135 of New York Penal Law and sentenced to an indeterminate prison of more than 5 years, was deportable as an alien convicted of an "aggravated felony").

six months is a presumptively reasonable amount of time to detain and execute a non-citizen's removal." [citations omitted]).

Notwithstanding this view taken by parties and the Magistrate Judge, however, the law in this Circuit is that an individual in Plaintiff's position—whose order of removal for an aggravated felony has been stayed pending review of the removal order by the Second Circuit in accordance with the Second Circuit's forbearance agreement—is detained under 8 U.S.C. § 1226(c), not § 12331.  *See,* *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018), *as amended* (May 22, 2018); *see also*, *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 796 (W.D.N.Y. 2019)(wherein this Court noted that where, as here, a petition for a review was pending before the Circuit and stay is filed such that the petitioner cannot be removed because of the forbearance agreement, "the Court follows the weight of the case law in this Circuit and finds that Petitioner is detained pursuant to § 1226(c)").

This distinction in the statutory authority upon which Plaintiff was detained is significant.  The Supreme Court has highlighted two key distinctions between detentions pursuant to §1226(c) and those pursuant to §1231.  First, it has observed that in the case of §1231 detentions, as in *Zadvydas*, such individuals—having been ordered removed but still being detained in the United States—"were ones for whom removal was 'no longer practically attainable,' " depriving detention of "its purported immigration purpose" of facilitating removal. *Demore v. Kim*, 538 U.S. 510, 527 (2003). Second, the Court has recognized that in the case of a §1231 detention as that involved in *Zadvydas*, such detention was 'indefinite' and 'potentially permanent,'" while under 1226, "the detention is of a much shorter duration." *Id*. at 528; *see also, Black v. Decker*,

29

103 F.4th 133, 144 (2d Cir. 2024)(same).  As a result, §1226(c) mandates that certain

classes of criminal aliens, including those like Plaintiff who have been convicted of an

aggravated felony, be detained.

> As the Second Circuit has recently observed:
>
> The Supreme Court has held that detention under section 1226(c) without an initial bond determination does not, on its face, violate the detainee's due process rights where detention is "for the limited period of ... removal proceedings." *Demore v. Kim*, 538 U.S. 510, 531 (2003). In *Demore*, Hyung Joon Kim, an LPR who had been detained under section 1226(c) for six months, challenged the constitutionality of the statute, arguing that detention with "no determination that he posed either a danger to society or a flight risk" violated his due process rights. *Id*. at 514, 530–31. The Supreme Court disagreed. Finding that Congress was "justifiably concerned" that criminal noncitizens would "fail to appear for their removal hearings in large numbers," the Court held that Congress "may," consistent with due process restrictions on government power, "require that persons such as respondent be detained for the brief period necessary for their removal proceedings" without an initial bond hearing. *Id*. at 513–14.
>
> The Supreme Court has also ruled that section 1226(c) itself authorizes prolonged detention. Indeed, it has construed the statute, together with section 1226(a), to provide that detention "***must*** continue 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 583 U.S. at 303 (emphasis in original) (quoting 8 U.S.C. § 1226(a)). And the text of section 1226(c) does not require a bond hearing after some predetermined period of detention: in *Jennings*, the Court rejected the Ninth Circuit's reading of section 1226 to include a six-month cap as "implausible," and warned that "there is no justification for" identifying such a time limit "without any arguable statutory foundation." *Id*. at 296–97.
>
> Read together, then, *Demore* and *Jennings* instruct that (1) due process does not require an initial bond determination for those detained under section 1226(c), and (2) section 1226's text cannot be construed to require a bond hearing after any particular fixed period of detention.

*Black v. Decker*, 103 F.4th 133, 141–42 (2d Cir. 2024).

Consequently, it is now settled that "inadmissible or deportable 'criminal aliens,' who are detained pursuant to 8 U.S.C. § 1226(c), have no statutory right to a bond hearing." *Bermudez Paiz v. Decker*, 2018 WL 6928794, at *5 (S.D.N.Y. Dec. 27, 2018) (emphasis added).

As the foregoing makes clear, there is no question that DHS/ICE was not only authorized but required by law to take custody of Plaintiff upon his release from DOCCS custody.  As such, Plaintiff's confinement clearly stemmed from legal process, and under New York Law, "[a] claim for false imprisonment will only lie where the confinement does not stem from legal process." *Cohen v. United States*, 640 F. Supp. 3d 324, 344 (S.D.N.Y. 2022), *aff'd sub nom*. Cohen v. Trump, No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024).  As the Supreme Court articulated:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.

*Wallace v. Kato*, 549 U.S. 384, 389-390 (2007).   "[T]he tort of false arrest does not permit recovery for 'confinement imposed pursuant to legal process.'" *Coakley v. Jaffe*, 72 F. Supp. 2d 362, 363 (S.D.N.Y. 1999) (quoting *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)).

Stated simply, "'where the illegal imprisonment is pursuant to legal process which is valid on its face, the State cannot be held liable in damages for wrongful detention ... [unless] the court issuing the process lacked jurisdiction of the person or

the subject matter.'" *Collins v. State*, 69 A.D.3d at 51 (quoting *Harty v. State of New York*, 29 A.D.2d at 244).

While this Court can readily envision a situation in which DHS/ICE's continued detention of a detainee originally made pursuant to a facially valid order issued by a court with appropriate jurisdiction and thus privileged would lose that privilege, this is not that case. For example, in *Miller v. State*, 124 A.D.3d 997, 999 (3rd Dep't. 2015), the Third Department determined that DOCCS, in continuing to hold a prisoner beyond the maximum term of imprisonment as set forth in his original sentence and commitment order, which unambiguously directed that he be released after 18 months of confinement, could not claim that their actions were privileged.  As the Court observed, "DOCCS was conclusively bound by the terms of the sentence and commitment order," which unambiguously directed that claimant be released after 1 ½ years of confinement. DOCCS continued to confine claimant after that period had ended and, given the absence of any order that required it to do so, its actions were not privileged." *Id*.

Here, unlike DOCCS in *Miller*, DHS/ICE did not continue to detain Plaintiff beyond some prescribed term.  Rather, Plaintiff was being held pending completion (or termination) of his removal proceedings.  In the Court's view, whether due process concerns required that Defendant, at some point in the course of Plaintiff's mandatory detention under 8 U.S.C. §1226(c) to do more than was done here, *see, Black v. Decker*, 103 F.4th at 142, 145 (characterizing whether prolonged detention under §1226(c) without a bond hearing will at some point violate an individual detainee's due process rights as an "open question"), does not, under New York law,

impact the outcome since such process would do nothing to negate the lawfulness of Plaintiff's initial detention.

That said, and by way of illustration, had Defendant hypothetically continued to hold Plaintiff notwithstanding this Court's grant of his habeas petition—Defendant could not claim their actions were privileged for any period after the grant of such relief to Plaintiff, as the original order by which they first obtained custody of Plaintiff would have been rendered ineffectual by virtue of the order granting of the petition. Here, Defendant's lawful authority to detain Plaintiff was not revoked until the habeas petition was granted. Once it was, Plaintiff was released.  Plaintiff was never subject to false imprisonment under New York law.

Defendant has established and Plaintiff—by acknowledging that his first six months in immigration custody are not part of his false imprisonment/unlawful confinement claim—has effectively conceded, that Plaintiff's initial confinement was authorized by law, entirely lawful, and not accomplished in the absence of legal process. In New York, "[t]here is simply 'no remedy against the State for an illegal confinement if it is made pursuant to an order valid on its face when issued.'" *Nazario v. State*, 24 Misc.3d 443, 449 (Ct. Cl. 2009) (quoting *Jones v. State of New York*, 31 A.D.2d 992, 993 (3rd Dep't. 1969), *aff'd*, 75 A.D.3d 715 (3rd Dep't. 2010), lv. Denied, 15 N.Y.3d 712 (2010); *see also Corcoran v. State of New York*, 30 A.D.2d 991 (3rd Dep't. 1968), *aff'd*, 24 N.Y.2d 922 (1969).

Based upon these facts this Court determines that Defendant has conclusively established that the initial immigration detention of Plaintiff was pursuant to legal process, supported by probable cause, and, therefore, privileged.

Having found Plaintiff's initial detention to be lawful and thus privileged, this Court nevertheless recognizes that the Magistrate Judge's determination that Plaintiff's custody was not privileged hinged upon the conclusion that Defendant failed to comply with due process and its own regulations in its continued detention of Plaintiff.  In this regard Magistrate Judge Schroeder determined:

> As to the fourth element, defendant's actions are privileged if they are "reasonable and the detention [was] conducted in accordance with federal standards." *Polanco v. United States*, 2014 WL 795659, at *4 (E.D.N.Y. Feb. 27, 2014). This Court agrees that the prior Habeas Decision decided this issue and estops defendant from arguing to the contrary.

*D'Alessandro*, 2022 WL 2829748, at *9.

In assessing what effect, if any, Defendant's conduct after it took lawful custody of Plaintiff has on the viability of his false imprisonment claim, the Court believes that the case of *Ifill v. State*, 149 A.D.3d 1287 (3rd Dep't. 2017), provides some insight.  *Ifill* involved a claim from a New York State prisoner who alleged that he had been subject to false imprisonment/wrongful confinement after it was determined that he had been held in DOCCS custody beyond the maximum expiration date of his sentence.  The claimant in *Ifill* was transferred into DOCCS custody from local custody after his post-release supervision (PRS) was revoked following his arrest, conviction, and sentencing for a misdemeanor offense in local court.  "As such," the Third Department observed, "there is no question that, at the time of claimant's transfer from local custody to state custody in December 2008, DOCCS's confinement of claimant was privileged. Rather, claimant argues that his confinement became unlawful on July 22, 2009 [the maximum expiration date for his

sentence], and that his continued detention thereafter through October 23, 2009, was not privileged." *Ifill v. State*, 149 A.D.3d at 1289.

In rejecting this claim, the Third Department, after citing the four elements required to establish a cause of action for false imprisonment or unlawful confinement, observed that "where the illegal imprisonment is pursuant to legal process which is valid on its face, defendant cannot be held liable in damages for wrongful detention . . . unless the court issuing the process lacked jurisdiction of the person or the subject matter." *Ifill v. State*, 149 A.D.3d at 1288–89 (quotations and citations omitted).   Under these circumstances, the Court determined that DOCCS confinement of claimant from July 22, 2009, through October 23, 2009, was privileged. *Id*.

As was argued by the claimant in *Ifill*, Plaintiff here argues, and Magistrate Judge Schroeder determined, that although Plaintiff imprisonment may have been privileged at the outset, that privilege was lost during such imprisonment. In *Ifill*, claimant argued that his continued detention became unlawful once his maximum term of imprisonment expired. Here, Plaintiff, citing *Zadvydas*, argues that his continued detention became unlawful after six months, based upon his failure to receive a bond hearing and DHS/ICE's failure to follow their own regulations.  Dkt. # 95, at n. 3.  While Magistrate Judge Schroeder agreed with Plaintiff, this Court does not.

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court held that § 1226(c) could not be read to contain an implicit six-month limitation on detention without bond, because the statute "does not on its face limit the length of the detention it

authorizes." *Id.* at 303. Rather, as Justice Alito explained, the express language of §

1226(c), read together with § 1226(a), "makes clear that detention of aliens within its

scope must continue 'pending a decision on whether the alien is to be removed from

the United States.'" *Id.* (quoting § 1226(a)); *see also*, *Black v. Decker*, 103 F.4th at

145 (wherein Second Circuit "accepted government's assertion that the Constitution

'provides no basis for requiring bond hearings whenever the detention of a criminal

noncitizen under § 1226(c)' exceeds any set duration," but nonetheless noted that

Second Circuit precedent "suggest[ed] strongly that due process places *some* limits

on detention under section 1226(c) without a bond hearing.").

Concluding that there are due process limitations that protect individuals held

under §1226(c) from unreasonably prolonged detentions, the Second Circuit has

adopted "the flexible *Mathews* framework to assess, case-by-case, whether an

individual's prolonged section 1226(c) detention violates due process." *Black v.*

*Decker*, 103 F.4th at 150 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Minimally, then, the evidence in this case establishes that the Defendant's

initial detention of Plaintiff was lawful and authorized.  Vested with such lawful

authority, and absent even an allegation that Defendant was "using the legal

process of immigration detention for reasons other than the reasons for which the

detention was designed," *cf.*, *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d

249, 278 (D. Conn. 2008), any process violations which may have occurred in

Defendant's review (or failure to review) Plaintiff's detention once he was lawfully

detained are, in this Court's view under New York law, insufficient to sustain a false

imprisonment claim.   As Plaintiff has not and cannot establish that his

"confinement…lack[ed] a statutory or regulatory basis," *see*, *Hernandez v. State*, 48 Misc. 3d 218, 220 (N.Y. Ct. Cl. 2015)—since his initial confinement was, in fact, statutorily mandated, *see*, 8 U.S.C. §1226(c)— his false imprisonment claim must fail.

This Court further notes that New York law recognizes that, "there is an important distinction for false imprisonment between acts performed in excess of the actor's jurisdiction and those performed in the clear absence of any jurisdiction or authority; the former is privileged, the latter is not." *Mickens v. State*, 25 Misc. 3d 191, 204 (Ct. Cl. 2009)(quotations omitted)(citing *Sassower v. Finnerty*, 96 A.D.2d 585, 586 (2nd Dep't. 1983), *appeal dismissed* 61 N.Y.2d 756 (1984); *Harley v. State of New York*, 186 A.D.2d 324 (3rd Dep't. 1992); *Lombardoni v. Boccaccio*, 121 A.D.2d 828, 829 (3rd Dep't. 1986); *LaPier v. Deyo*, 100 A.D.2d 710 (3rd Dep't. 1984)); *see also*, *Robinson v. United States*, 332 F. Supp. 3d 516, 527 (E.D.N.Y. 2018) ("any alleged false imprisonment ends when a removal proceeding has been held and a removal order issued."). Here, it may not fairly be said that DHS/ICE's conduct in continuing to detain Plaintiff during the pendency of his removal proceedings was done "in the clear absence of any jurisdiction or authority." As a result, it was privileged. While the precise contours of whatever process an immigration detainee in Plaintiff's shoes might be entitled may only be determined on a case-by-case basis, *see*, *Black v. Decker*, 103 F.4th at 145, the determinative fact in this case is that the original legal process which validly resulted in Plaintiff being transferred into Defendant's custody was never invalidated.  While this Court did ultimately order that the habeas petition be granted and Plaintiff released,

Plaintiff was, in compliance with that order, released.  During the entirety of the duration of Plaintiff's custody, the actions of the Defendant remained privileged by virtue of the validity of the original legal process which granted them custody of Plaintiff.

While Magistrate Judge Schroeder determined that the granting of the habeas petition conclusively established the elements of Plaintiff's false imprisonment/ wrongful confinement claim, this Court disagrees.  That Plaintiff's detention may have become unwarranted such that he was entitled to the granting of habeas release does not compel the determination that his initial detention was unlawful, improper, or unwarranted *ab initio*.  In support of his view that the decision in the habeas case was conclusive here, Magistrate Judge Schroeder cited the Eastern District decision in *Polanco v. United States*, 2014 WL 795659.  Specifically, Magistrate Judge Schroeder cited the case as authority for the proposition that a "defendant's actions are privileged if they are 'reasonable and the detention [was] conducted in accordance with federal standards.'" *Polanco*, 2014 WL 795659, at *4; see, Dkt. #100, p. 23.  However, closer examination reveals that the *Polanco* Court cited to the case of *Hyatt v. United States*, 968 F.Supp. 96, 108 (E.D.N.Y. 1997), for its proposition that, "[t]o be privileged, the actions of the immigration officer must be reasonable and the detention must be conducted in accordance with federal standards."  *Hyatt*, however, involved the viability of an FTCA false imprisonment claim under Illinios law.

Notably, Illinois law, however, unlike the New York law which this Court must apply in this case, expressly provides that "false imprisonment may result from an

unlawful detention following an otherwise legal arrest." *Hyatt*, 968 F. Supp. at 110

("[T]he Illinois Supreme Court and th[e Illinois Appellate Court] have held that false

imprisonment may result from an unlawful detention following an otherwise legal

arrest.")(citing *Weimann v. County of Kane*, 150 Ill.App.3d 962, 104 Ill.Dec. 110,

113, 502 N.E.2d 373, 376 (Ill.App.Ct.1986); *Fulford v. O'Connor*, 3 Ill.2d 490, 121

N.E.2d 767 (1954); *Hughes v. New York Central System*, 20 Ill.App.2d 224, 155

N.E.2d 809 (1959)).

 This Court concludes, however, that in New York—unlike Illinois—the Courts

have consistently found that, an unlawful detention "is privileged where the

confinement was by arrest under a valid process issued by a court having

jurisdiction." *Donald v. State of New York*, 17 N.Y.3d at 395 (internal quotation

marks and citation omitted). "In other words, 'where the illegal imprisonment is

pursuant to legal process which is valid on its face, the State cannot be held liable in

damages for wrongful detention ... [unless] the court issuing the process lacked

jurisdiction of the person or the subject matter.'" *Collins v. State*, 69 A.D.3d at 51

(quoting *Harty v. State of New York*, 29 A.D.2d at 244).

 Moreover, under New York law, "[a]n order discharging the prisoner in habeas

corpus proceedings is not conclusive as to the wrongfulness of the restraint in a

subsequent action for false imprisonment." *Losaw v. Smith*, 109 A.D. 754 (3d Dep't.

1905). Indeed, in New York, "the fact that the detainer has been determined to be

illegal in a habeas corpus proceeding does not render the State liable in a

subsequent claim for false imprisonment." *Nazario v. State*, 24 Misc.3d at 449; *see

also, Nuernberger v. State of New York*, 41 N.Y.2d 111, 116 (1976). "There is

simply no remedy against the State for an illegal confinement if it is made pursuant to an order valid on its face when issued." *Nazario v. State*, 24 Misc. 3d at 449 (citations and quotations omitted).

In the end, Plaintiff—by acknowledging that his first six months in immigration custody are not part of his false imprisonment/unlawful confinement claim—has effectively conceded that his initial confinement was authorized by law pursuant to a valid order; it clearly was not accomplished in the absence of legal process. Accordingly, this Court concludes that under New York law Plaintiff's detention was privileged, and that as a result, Plaintiff's claim for false imprisonment/wrongful confinement cannot succeed. Because Plaintiff has failed to plead facts sufficient to establish his claim of false imprisonment, the Government's motion to dismiss is granted. *See generally Barry v. United States*, 667 F.Supp.3d 495 (S.D. Tex. Mar. 31, 2023) (concluding that the "undisputed fact defeats the cause of action for false imprisonment" where "the United States possessed the legal authority to detain").

## **CONCLUSION**

Defendant's objections are granted, in part, and Plaintiff's complaint is DISMISSED.  Since the problem with Plaintiff's false imprisonment/wrongful confinement claim is substantive and additional pleadings would not cure it, any effort to amend the complaint would be futile; therefore, leave to amend is denied.

The Clerk's Office is directed to close this case.

**IT IS SO ORDERED.**

_ _s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  August 12, 2024
        Buffalo, New York